JAMES W. BRODBINE *vs.* INHABITANTS OF REVERE.

Suffolk.    November 13, 1902. — February 26, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, & HAMMOND, JJ.

*Tax,* Abatement.    *Practice, Civil,* Appeal.    *Constitutional Law.    Metropolitan Park Commissioners.*

The objection that an appeal of a petitioner from a decision of assessors of taxes was entered before the expiration of thirty days from the notice of the decision, contrary to the provision of St. 1890, c. 127, § 2, is waived by the respondent appearing and filing an agreement in writing for the appointment of a commissioner, and cannot be taken after the evidence is closed and the argument before the commissioner is begun.

A notice in writing given by assessors of taxes, to a petitioner for an abatement of his taxes, of their decision that the petitioner be given leave to withdraw, is a decision adverse to him from which an appeal may be taken under St. 1890, c. 127.

The provision of St. 1894, c. 288, § 3, giving the board of metropolitan park commissioners authority to "make rules and regulations for the government and use of the roadways or boulevards under its care, breaches whereof shall be breaches of the peace, punishable as such in any court having jurisdiction of the same ", is constitutional.

A regulation made by the metropolitan park commissioners, under the power given them by St. 1894, c. 288, § 3, forbidding the driving of a wagon or other vehicle, for carrying merchandise or other articles, along parkways, is not void as unreasonable and oppressive.

APPEAL, under St. 1890, c. 127, and acts in amendment thereof, from a decision of the assessors of taxes of the town of Revere upon a petition filed November 3, 1900.

In the Superior Court the case was heard by *Bond,* J., upon the report of a commissioner appointed under the statute. The judge refused to make the rulings requested by the respondent, and found for the petitioner in the sum of $244.68. The re-

spondent alleged exceptions, raising the questions stated by the court.

*S. R. Cutler*, (*H. W. James* with him,) for the respondent.

*B. B. Dewing*, for the petitioner.

KNOWLTON, C. J. The respondent's first contention is that the petitioner's appeal cannot avail him because it was entered before the expiration of thirty days from the notice of the decision of the assessors, given in writing to the appellant. This objection was not taken until after the evidence was closed and the argument was begun before the commissioner. The respondent had duly appeared and filed an agreement in writing for the appointment of a commissioner, and had been fully heard before him. This action on its part was a waiver of its right to object to the jurisdiction by reason of the early entry of the appeal. *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257.

The contention that it does not appear that the assessors refused to make an abatement to the petitioner is without foundation. After the hearing upon his petition they gave him a notice in writing of their decision that he be given leave to withdraw. This was a decision adverse to him upon the petition, and was treated as such by the parties.

The most important question in the case grows out of the action of the metropolitan park commissioners in locating the Revere Beach boulevard or parkway, and in making rules and regulations in reference thereto. The contention is that the laying out and construction of the parkway left the petitioner with no access to a part of the land except from the parkway, and that the rule of the parkway commissioners, forbidding the driving of a wagon or other vehicle for carrying merchandise or other articles along the parkway, made it impossible for him profitably to use the land for agricultural purposes, for which alone it would ordinarily be used. The commissioner therefore found that the value of the land was materially diminished by these acts of the park commissioners.

The St. 1894, c. 288, § 3, gives the board authority to " make rules and regulations for the government and use of the roadways or boulevards under its care, breaches whereof shall be breaches of the peace, punishable as such in any court having

jurisdiction of the same." The respondent contends that this statute is unconstitutional as a delegation of legislative power.

It is well established in this Commonwealth and elsewhere, that the Legislature cannot delegate the general power to make laws, conferred upon it by a constitution like that of Massachusetts. *Opinion of the Justices,* 160 Mass. 589. *Larcum* v. *Olin,* 160 Mass. 102. *Stone* v. *Charlestown,* 114 Mass. 214. *State* v. *Hayes,* 61 N. H. 264. *Barto* v. *Himrod,* 4 Seld. 483. *Gloversville* v. *Howell,* 70 N. Y. 287. *Locke's appeal,* 72 Penn. St. 491. *State* v. *Morris County,* 7 Vroom, 72. *Harbor Commissioners* v. *Excelsior Redwood Co.* 88 Cal. 491. *People* v. *Hurlbut,* 24 Mich. 44. This doctrine is held by the courts almost universally.

There is a well known exception to it, resting upon conditions existing from ancient times in most of the older States of the Union, which the constitutions of the States generally recognize, namely, the existence of town or other local governmental organizations which have always been accustomed to exercise self-government in regard to local police regulations and other matters affecting peculiarly the interests of their own inhabitants. On this account the determination of matters of this kind has been held to be a proper exercise of local self-government which the Legislature may commit to a city or town. *Commonwealth* v. *Bennett,* 108 Mass. 27. *Stone* v. *Charlestown,* 114 Mass. 214. *Opinion of the Justices,* 160 Mass. 586, 589. *People* v. *Albertson,* 55 N. Y. 50. *Gloversville* v. *Howell,* 70 N. Y. 287. *State* v. *Morris County,* 7 Vroom, 72. How far this principle may be extended in the proper application of it is a subject on which there is much difference of opinion among judges. Whether it will justify the creation of a tribunal other than the voters or their usual representatives, where they have a representative government for the management of municipal affairs, seems not to have been much considered by the courts. It is very clear, where the people of a city or town have become so numerous that the management of their municipal affairs can be conducted conveniently only by a representative body like a city council, that municipal legislation, such as making ordinances and regulations as to local matters affecting the health, safety, and convenience of the people, may be intrusted to the

people's chosen representatives in a city government. Hence city councils are usually authorized to pass ordinances, as voters of towns adopt by-laws. In this Commonwealth legislation has gone further than this. Apparently on grounds of expediency amounting almost to necessity, the making of rules and regulations for the preservation of the public health has been intrusted to boards of health in towns as well as in cities, and to a State board of health, and a violation of the rules established by city or town boards has long been and is now punishable in the courts. St. 1816, c. 44, § 3. Rev. Sts. c. 21, §§ 1, 5, 6. Gen. Sts. c. 26, §§ 1, 5. Pub. Sts. c. 80, §§ 1, 4, 8, 18. R. L. c. 75, § 65. The validity of these statutes, which has long been recognized, stands upon one or both of two grounds. They may be considered as being within the principle permitting local self-government as to such matters, the board of health being treated as properly representing the inhabitants in making regulations, which often are needed at short notice, and which could not well be made, in all kinds of cases, by the voters in town meeting assembled. Perhaps some of these statutes may also be justified constitutionally on the ground that the work of the board of health is only a determination of details in the nature of administration, which may be by a board appointed for that purpose, and that the substantive legislation is that part of the statute which prescribes a penalty for the disobedience of the rules which they make as agents performing executive and administrative duties.

In principle, *Commonwealth* v. *Plaisted*, 148 Mass. 375, more nearly resembles the present case than any other that has come to our attention. In that case it was decided that regulations made by the board of police of Boston, appointed by the governor, were valid, although they prescribed punishments for the breach of them. The reasons for this decision are not very fully stated, but we understand the doctrine to be that, inasmuch as such rules could be made by the city of Boston, represented by its board of aldermen and city council, they could be made with equal legality under the St. 1878, c. 244, by the board of police commissioners, appointed by the mayor with the approval of the city council, who were given by that act all the powers of the board of aldermen and city council

in regard to such matters. This statute was repealed and superseded by the St. 1885, c. 323, which established a board of police to be appointed by the governor, consisting of three citizens of Boston, and this board was given the same powers as had been exercised by its immediate predecessor. The opinion seems to hold that this board, so appointed, properly represents the city of Boston in its constitutional right, under the authority of the Legislature, to exercise local self-government in matters of this kind. It requires but a slight extension of this doctrine, with no change of principle, to cover the present case. The public parks and ways in charge of the board of metropolitan park commissioners, under the Sts. 1893, c. 407 and 1894, c. 288, are purchased or taken by the Commonwealth for a public use. The Commonwealth keeps them in charge through its board of park commissioners. As to all matters of police and management which pertain to their use as public parks, the Commonwealth succeeds to the rights which were before in the cities and towns, in reference to their previous condition and uses. Its board of officers in this respect stands in a relation to the parks similar to that held by the police board of the city of Boston to the territory of that city, and inasmuch as for most purposes the land held for parks is taken out of the dominion of the cities and towns in which it is situated, the rights previously exercised by the cities or towns ·in their dominion may well be exercised by the State through a similarly appointed board.

There is also strong ground for the contention that the quoted language of the statute simply leaves to the board the administration of details which the Legislature cannot well determine for itself, and which it may therefore leave to the determination of a subordinate tribunal, and that the substance of the legislation is found in that part of the statute which prescribes punishment for disregard of the regulations so determined. For a kindred exercise of legislative power, see *Kingman, petitioner,* 153 Mass. 566, 576. This principle is analogous to that which marks a distinction between matters that are substantive and those that are incidental and subsidiary, in the cases which decide that parties cannot bind themselves by a contract to settle their controversies by arbitration out of court, although they

may bind themselves by such a contract in regard to incidental matters, like the assessment of damages. *Rowe* v. *Williams*, 97 Mass. 163. *Miles* v. *Schmidt*, 168 Mass. 339. *Hood* v. *Hartshorn*, 100 Mass. 117. *Hutchins* v. *Liverpool & London & Globe Ins. Co.* 153 Mass. 143.

There are other statutes as to penal rules and regulations made by the board of harbor and land commissioners, and by the board of railroad commissioners, and perhaps by other boards, which cannot be sustained except upon this principle. R. L. c. 96, § 11 ; c. 112, § 53.

We are of opinion that the authority given to the board of metropolitan park commissioners to make rules and regulations in regard to parks and ways, with a provision that breaches of these rules shall be punishable like breaches of the peace, is not a delegation of legislative power which is unconstitutional.

We are also of opinion that the regulation referred to is not void on the ground that it is unreasonable and oppressive.

*Exceptions overruled.*