### COMMONWEALTH *vs.* ARTHUR KINGSBURY.

Franklin.    September 15, 1908. — October 19, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Automobile.    Constitutional Law.*

The Legislature has the right, acting under the police power, to prescribe that automobiles shall not pass over certain streets or public ways in a city or town.

St. 1905, c. 366, § 1, as amended by St. 1906, c. 412, § 9, providing that boards of aldermen in cities and of selectmen in towns may make special regulations as to the speed of automobiles and as to their use " on particular roads or ways, including their complete exclusion therefrom," and providing also for publication of the regulations, and for an opportunity to be given for a protest against the action of such a board to the State highway commission by at least fifty residents of the Commonwealth, ten of whom must be taxpayers of the city or town affected, and providing that, in case of such protest, the regulations shall not be effective until a hearing thereon and a decision of the commission approving of the regulations, is not an improper delegation by the Legislature to the aldermen and selectmen of the power to make laws, but is a proper exercise of the police power by the Legislature, and therefore is constitutional, as also is St. 1907, c. 203, fixing a penalty for a violation of such a regulation.

COMPLAINT, received and sworn to before the District Court of Franklin on September 20, 1907, charging the defendant with operating an automobile on September 15, 1907, upon a highway

from which automobiles were excluded by vote of the selectmen of the town of Ashfield under St. 1907, c. 203.

On appeal to the Superior Court, the case was tried before *Stevens*, J., upon an agreed statement of facts, from which it appeared that on the occasion in question the defendant was driving his automobile on a highway from which automobiles had been excluded by the selectmen, as alleged in the complaint, intending to go to the house of one William Howes, which was located on the highway in question ; that the purpose of the defendant's trip was to carry a relative who was visiting him to the house of Howes in order that said relative might visit his sister, who was the wife of Howes ; that there were three roads which the defendant could have taken which would have led him to the house of Howes, all three of which, or the parts of the same which lie in the town of Ashfield, were posted as provided by St. 1907, c. 203, excluding automobiles therefrom; that the defendant could not have reached the house of Howes without passing over some portion of a highway from which automobiles were excluded; that on the occasion in question the defendant operated his automobile over a distance of about one half mile of posted highway; that, had the defendant passed over either of the other two roads, he would have travelled over a distance of between two and three miles of highway in Ashfield so posted; that the highway which was so posted, over which the defendant did pass, was an ordinary country road, the travelled part of which is about twelve feet in width; that on the road was a public schoolhouse and several farm houses, one of which was the farm of Howes; that the automobile was the ordinary type of touring car; that it was licensed and that in all other respects the defendant had complied with the law relative to the use of automobiles.

The defendant was convicted, and alleged exceptions, as stated in the opinion.

*C. N. Stoddard*, for the defendant.

*R. W. Irwin*, District Attorney, for the Commonwealth.

KNOWLTON, C. J.  The defendant was convicted of having operated an automobile in violation of law, over a highway legally laid out in the town of Ashfield, from which automobiles were excluded under the authority of the statutes.  He took excep-

tion to the refusal of the trial judge to make certain rulings requested, which, in a variety of forms, raised the question whether the St. of 1905, c. 366, § 1, as amended by the St. 1906, c. 412, § 9, and the St. 1907, c. 203, were constitutional. .The first of these statutes authorizes boards of aldermen in cities and boards of selectmen in towns to "make special regulations as to the speed of automobiles and motor cycles, and as to the use of such vehicles on particular roads, including their complete exclusion therefrom." These regulations must be published in one or more newspapers and posted conspicuously on sign boards. On protest in writing within sixty days, made by not less than fifty residents of Massachusetts, at least ten of whom are taxpayers of the city or town, the Massachusetts highway commission, after notice and a hearing, may approve the regulations, and if there is such a protest the special regulations are of no validity without such approval. The St. 1907, c. 203, prescribes penalties for violation of the regulations. The contention of the defendant is that the Legislature had no constitutional right to enact such a law.

Automobiles are vehicles of great speed and power, whose appearance is frightful to most horses that are unaccustomed to them. The use of them introduces a new element of danger to ordinary travellers on the highways, as well as to those riding in the automobiles. In order to protect the public great care should be exercised in the use of them. Statutory regulation of their speed while running on the highways is reasonable and proper for the promotion of the safety of the public. It is the duty of the Legislature, in the exercise of the police power, to consider the risks that arise from the use of new inventions applying the forces of nature in previously unknown ways. The general principle is too familiar to need discussion. It has been applied to automobiles in different States with the approval of the courts. *Commonwealth* v. *Boyd,* 188 Mass. 79. *Christy* v. *Elliott,* 216 Ill. 31. *People* v. *Schneider,* 139 Mich. 673. *People* v. *MacWilliams,* 86 N. Y. Supp. 357.

It seems too plain for discussion that, with a view to the safety of the public, the Legislature may pass laws regulating the speed of such machines when running upon highways. The same principle is applicable to a determination by the Legislature that

there are some streets and ways on which such machines should not be allowed at all. In some parts of the State, where there is but little travel, public necessity and convenience have required the construction of ways which are steep and narrow, over which it might be difficult to run an automobile, and where it would be very dangerous for the occupants if automobiles were used upon them. In such places it might be much more dangerous for travellers with horses and with vehicles of other kinds if automobiles were allowed there. No one has a right to use the streets and public places as he chooses, without regard to the safety of other persons who are rightly there. In choosing his vehicle, every one must consider whether it is of a kind which will put in peril those using the streets differently in a reasonable way. In parks and cemeteries and private grounds, where narrow roads with precipitous banks are sometimes constructed for carriages drawn by horses, it has been a common practice to exclude automobiles altogether, chiefly because of the danger of their frightening horses.

The general principle referred to was applied long ago to a different kind of vehicle, in *Commonwealth* v. *Stodder*, 2 Cush. 562, a case which relates to an ordinance of the city of Boston, prescribing the streets on which certain omnibuses might be run and excluding them from other streets. A part of the opinion is as follows: " We perceive nothing objectionable in an ordinance, by the mayor and aldermen, providing for the safety and convenience of the public generally, by prescribing, by a general by-law or ordinance, certain streets or portions of streets, to be used for travel by vehicles, exposing by their manner of use the lives and limbs of the public generally, who may have occasion to use the public streets, if such vehicles are permitted to use the public streets indiscriminately; and such regulations and restrictions might be warranted even to effect the minor object, that of preventing the greatly [sic] obstructing [of] the free and convenient use of the streets for general purposes, by interdicting carriages of unusual size or drawn by an unusual number of animals, or those of such character as would greatly interfere with the public convenience and safety. To take a strong case: Suppose the proprietor of the omnibuses from Roxbury should deem it expedient to propel his carriages by steam power, pass-

ing through Washington Street, at a rapid rate, would it not be a lawful and proper regulation for the mayor and aldermen to prohibit the using of Washington Street by vehicles propelled by steam power? We cannot doubt that it would be."

The right of the Legislature, acting under the police power, to prescribe that automobiles shall not pass over certain streets or public ways in a city or town, seems to us well established both upon principle and authority.

It is contended that this power cannot be delegated to a board of aldermen or selectmen, or to the Massachusetts highway commission. The question involved in this contention was fully considered and was decided in *Brodbine* v. *Revere,* 182 Mass. 598. It also arose in *Commonwealth* v. *Crowninshield,* 187 Mass. 221. It was decided in favor of the Commonwealth's contention in *Nelson* v. *State Board of Health,* 186 Mass. 330, and was discussed and similarly decided in *Commonwealth* v. *Sisson,* 189 Mass. 247. In *Commonwealth* v. *Stodder, ubi supra,* and in *Commonwealth* v. *Mulhall,* 162 Mass. 496, the prohibition was by an ordinance passed by a local board. These cases make further discussion unnecessary.

*Exceptions overruled.*