COMMONWEALTH *vs.* MARK A. SLOCUM.

Hampden.     March 25, 1918. — May 23, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Springfield. Constitutional Law,* Police power. *Carrier,* Of passengers. *Motor Vehicle. Municipal Corporations,* By-laws and ordinances. *Statute,* Amendment. *License. Tax.*

St. 1913, c. 429, in substance empowering the mayor and aldermen and the city council of Springfield to delegate to commissions, boards or heads of departments such powers as to the granting and issuing of licenses or permits as the mayor and aldermen or the city council are authorized to grant and issue by the statutes of the Commonwealth, is constitutional, and it is a proper exercise of the power so granted for the city council of Springfield by an ordinance approved by the mayor to delegate to the police commission of that city the power vested

in the city by St. 1916, c. 293, upon its acceptance of that statute by the council, of licensing and regulating the transportation of passengers for hire by motor vehicles.

The authority thus conferred by St. 1913, c. 429, above described, includes authority to delegate powers conferred upon the city council by statutes after its passage as well as those already conferred at the time of its enactment.

If an ordinance of a city contains some provisions which are valid and some which are unconstitutional and void, and those which are invalid are so distinct and severable that, notwithstanding their invalidity, the remainder of the ordinance may stand as valid, and if the ordinance is amended to correct the invalid provisions, it constitutes after amendment a single statutory entity and is to be construed as a whole.

By a provision of an ordinance of the city council of Springfield, which had accepted St. 1916, c. 293, authorizing the police commission of the city to grant licenses for the transportation of passengers for hire by motor vehicles when the commission finds the applicants to be "suitable to conduct such business" and the vehicles, after inspection, to be "proper and safe for use in such business," an untrammelled volition to grant or deny applications is not conferred, and the police commission is under obligation to act reasonably with reference to a business recognized as lawful when pursued with adequate safeguards.

A further provision of the same ordinance, that each licensee shall furnish a bond in the sum of $1,000 for the benefit of persons who may be injured by the carelessness of the licensee or of his employee in operating the motor vehicle, is not unduly burdensome nor unreasonable.

Other provisions of the same ordinance, giving to the treasurer of the city power after a hearing to require further surety or sureties upon the bond to be given by the licensee as above described, were *held* not to be open to sound objection.

A requirement in the same ordinance of the payment of $5 for each such license is not as a matter of law a tax upon property rather than a fee.

It was held that the ordinance above described was not prohibitive of a legitimate business but was merely regulative within the limits of reason, that it was not void as against public policy, and that it was constitutional and valid.

INDICTMENT, returned on September 10, 1917, charging that the defendant operated a motor vehicle on August 29, 1917, in the city of Springfield for the transportation of passengers for hire as a business without being licensed so to do by the city or its police commission.

In the Superior Court the case was tried before *Hamilton*, J. There was a verdict of guilty, and at the defendant's request the judge reported the case for determination by this court, the verdict to stand if the ordinance violated by the defendant was valid; otherwise, a verdict of not guilty was to be entered.

St. 1916, c. 293, is as follows:

"Section 1. Cities and towns shall have authority to license and regulate the transportation of passengers for hire as a business between fixed and regular termini by means of any motor vehicle,

except the trackless trolley vehicle, so called, not running on tracks or rails, and may impose reasonable license fees, make regulations for the operation of such vehicles within their own limits, and impose suitable penalties for the violation of such regulations: provided, however, that no such motor vehicle shall be operated as aforesaid until the licensee of the vehicle, in addition to complying with all regulations of the city or town in which the vehicle is to be operated, shall have deposited with the treasurer of any city or town in which a license has been taken out, security by bond or otherwise, approved by the city or town treasurer, in such sum as the city or town may reasonably require, conditioned to pay any final judgment obtained against the principal named in the bond for any injury to person or property, or damage for causing the death of any person, by reason of any negligent or unlawful act on the part of the principal named in said bond, his or its agents, employees or drivers, in the use or operation of any such vehicle. Any person so injured or damaged may sue on the bond in the name of the city or town treasurer, and damages so recovered shall go to the person injured or damaged.

"Section 2. Nothing in this act shall be construed as requiring the licensee to file more than one bond, which shall be filed in any city or town in which a license has been taken out.

"Section 3. This act shall take full effect in cities upon its acceptance by the city council, and in towns upon its acceptance by the voters of the town at any duly called town meeting. For the purpose of submitting this act to cities and to towns, it shall take effect upon its passage."

Chapter 7 of the ordinances of Springfield of 1916, which went into effect on November 1, 1916, and, incorporated therein, the amendments made by an ordinance which was passed on August 21, 1917, and became effectual on August 26, 1917, was as follows:

"Section 1. No person, firm or corporation shall engage in the city of Springfield in the transportation of passengers for hire as a business between fixed and regular termini by means of any motor vehicle, except the trackless trolley vehicle, so called, not running on tracks or rails, unless licensed so to do under the provisions hereof and then only as hereinafter provided.

"Section 2. The city council hereby delegates to the police commission the power vested in it by the laws of the Commonwealth

to license such motor vehicles for such transportation of passengers as a business.

"Section 3.  Applications for such licenses shall be made to the police commission on blank forms furnished by said commission and shall set forth the name, place of residence and post-office address of the applicant, a brief description of the motor vehicle a license for which is being applied for and such other information as the said commission may require.  The said commission may require that the truth of the allegations in such applications shall be sworn to before an officer authorized to administer oaths.

"Section 4.  The police commission may grant and issue to persons, firms and corporations duly making application therefor licenses to operate such motor vehicles for such transportation of passengers as a business within the city of Springfield subject to the provisions of law and the ordinances of the city of Springfield, provided they find the person, firm or corporation applying therefor suitable to conduct such business and provided further that they cause such vehicle to be inspected and after such inspection find the same to be proper and safe for use in such business.

"Section 5.  Persons, firms and corporations making application for such license to operate such vehicles shall designate the route or routes over which they shall desire to operate and with the approval of said commission such route or routes shall be granted. Such route or routes may be changed only with the consent and approval of said commission.  Termini of such routes shall be fixed and motor vehicles so licensed shall be driven to such termini before turning around, provided, nevertheless, that no such route shall terminate on Main Street between Franklin Street on the north and Park Street on the south.

"Section 6.  Every license shall be signed by the police commission and it shall be recorded in the office thereof.  It shall name the person licensed, his place of residence and a brief description of the motor vehicle licensed, the number of passengers exclusive of the operator which the vehicle may carry, and shall continue until the first day of May next ensuing, unless sooner rendered void.  Such licenses shall be numbered in regular order as granted and shall be expressed to be subject to the provisions of law and of the ordinances of the city of Springfield applicable thereto.

"Section 7. The fees for such licenses shall be five dollars for every motor vehicle so licensed.

· "Section 8. The said commission shall issue to the licensee a metal plate bearing the words 'Licensed motor vehicle No. ——, Springfield, 19—, — passengers,' setting forth the serial number of the license, the date, and the number of passengers exclusive of the operator that the car is licensed to carry. Said plate shall be attached to and kept on the dash or windshield of the motor vehicle in such a position as to be visible to the occupants thereof.

"Section 9. No person shall operate any such motor vehicle so licensed within the city of Springfield unless he shall be twenty years of age or older and unless he shall have first obtained a license so to do from the police commission, which license shall state the name, height and weight, color of hair, color of eyes and race of the licensee, his home address and the name of his employer if he operates such car as an employee. The application for such license shall be on a blank furnished by said commission, and the form of the application and the kinds of information to be furnished therein by the applicant shall be such as from time to time may be prescribed by said commission, and said commission may require that the truth of the allegations in such application shall be sworn to before an officer authorized to administer oaths. The said commission shall not grant such a license to any applicant who has not demonstrated to the satisfaction of said commission his ability to drive the vehicle proposed to be operated by him. Such licenses shall be signed by the police commission, shall be numbered in regular order as granted, shall be recorded in the office thereof and shall expire on the first day of May next succeeding the date thereof. The fee for such license shall be one dollar.

"Section 10. The said commission at the time of issuing such license shall deliver to the licensee a metal badge bearing the words: — 'Licensed Chauffeur No. ——, Springfield,' setting forth the serial number of the license, which badge shall be worn conspicuously upon the front of the hat or cap of the licensee at all times when he is operating any motor vehicle licensed under the provisions of this ordinance; and said commission shall also then deliver to the licensee an identification card, stating thereon the number of the license, the name, age, height, weight, color of the hair,

color of the eyes and race of the licensee, and the term of the license. No such licensee shall permit any other person to wear such badge, nor shall any person wear the badge of any other licensee, when operating any motor vehicle. Every person so licensed, while operating any motor vehicle licensed under the provisions of this ordinance, shall carry his identification card and the license for such vehicle, and at any time when requested by any police officer shall show such license and such identification card.

"Section 11. No motor vehicle so licensed shall be operated without having a sign thereon in form approved by said commission stating the main street or streets of the route, the termini of the route and the fare to be charged, which sign shall be so placed near the lower part of the windshield or on the dash or hood of the vehicle as to be plainly visible to persons on the street in front of the vehicle. The letters and figures on such sign shall be not less than two and one-half inches in height and shall have a stroke of not less than one-quarter inch in width. No other sign of any kind except the owner's name or symbol shall be placed or carried on any such vehicle.

"Section 12. A person licensed to operate such motor vehicle may with the permission of the police commission substitute another vehicle of the same carrying capacity for the vehicle so licensed. Before granting such permission the police commission shall cause said vehicle to be inspected and shall not give such permission unless they find the said vehicle to be proper and safe for use in such business. In case of such substitution the license shall be amended so as to show the substitution and to give a brief description of the motor vehicle so substituted.

"Section 13. A license shall not be issued until the license fee has been paid to the city treasurer nor until he has received a bond approved by him payable to him as such treasurer in the sum of one thousand dollars signed by the licensee as principal and a corporation as surety, which shall have complied with all the provisions of law as to transacting the business of a guarantee, fidelity and surety company within this Commonwealth, or such other sureties as shall be approved by the city treasurer, who shall be jointly and severally liable, conditioned to pay any final judgment obtained against the principal named in the bond for any injury to person or property, or damage for causing the death of

any person, by reason of any negligent or unlawful act on the part of the principal named in said bond, his or its agents, employees or drivers, in the use or operation of the vehicle so licensed. In case the surety on any such bond is an individual his execution thereof shall be acknowledged before an officer duly authorized to take acknowledgments.

"Section 14. In case said city treasurer at any time shall determine that any surety on any such bond is not possessed of sufficient property to be able to respond to the obligation of surety on such bond, whether any such damage may have occurred or accrued or not, said city treasurer after giving the principal thereof an opportunity to be heard, may require such principal to furnish another or further surety on such bond, or a new bond, for the remainder of the term of the license of the motor vehicle to which such bond relates, and if within five days after notice of such requirement such principal shall not furnish such new bond or such other or further surety, approved by said city treasurer, the motor vehicle license to which such bond relates, without any further action by the police commission, shall stand suspended until such new bond or such other or further surety, approved by said city treasurer, shall be furnished.

"Section 15. In case any surety on any such bond at any time may desire to terminate his liability on such bond as to any such damages that might occur or accrue in the future, such surety may terminate the same by giving at least five days' previous written notice thereof to the principal named in such bond and to the city treasurer, and upon receipt of such notice such principal shall furnish another surety on such bond or a new bond for the remainder of the term of the license of the motor vehicle to which such bond relates, and if before such termination of such liability of such surety such principal shall not furnish such new bond or such other surety, approved by the city treasurer, the motor vehicle license to which such bond relates, without any action by the police commission, shall stand suspended until such new bond or such other surety, approved by the city treasurer, shall be furnished.

"Section 16. No person operating any motor vehicle so licensed shall refuse to carry any person offering himself to be carried as a passenger therein, unless the seats of the same are fully occupied, or unless such person be intoxicated or disorderly.

"Section 17. Every motor vehicle so licensed shall be operated for six or more hours in every day during the term of its license that it is used in such transportation of passengers as a business; but no person shall operate any·such vehicle for more than twelve hours in any one day.

"Section 18. No person operating any motor vehicle so licensed shall solicit passengers by outcry or make any noise for the purpose of soliciting passengers.

"Section 19. No motor vehicle so licensed shall stand to wait for passenger in any street, square or public place, except on such portions thereof and during such hours as may be designated therefor by said police commission, and said commission may from time to time designate locations in streets, squares, and public places, in which general street travel will not be materially interfered with, where such vehicles may so stand; and said commission, at any time when it finds that any such location materially interferes with public travel, may cancel such locations, and said commission may at any time cancel any such hours for such use and prescribe other hours therefor.

"Section 20. No motor vehicle so licensed shall be stopped to take on or to discharge passengers at any place on any street except at the curb; nor shall any passenger be permitted to enter or leave the vehicle except from the side thereof nearest the curb, but this latter provision shall not apply to a passenger on a front seat where the operator's seat is on the side of the curb.

"Section 21. No motor vehicle so licensed shall be turned around on Main Street between Franklin Street on the north and Park Street on the south.

"Section 23. No greater number of passengers shall be carried at any one time in any such motor vehicle so licensed, than the license of such vehicle shall specify, provided that in addition thereto children under seven years of age may be carried therein in arms or seated on the laps of parents or adult person accompanying them, but no passenger with a child in arms or seated on the lap shall be permitted on any front seat of the vehicle. Nor shall any person be permitted to stand upon any running board or step of any such vehicle or to sit upon any fender, dash, top or door thereof.

"Section 24. No person operating any motor vehicle so licensed

shall collect fares, make change, or take on or discharge passengers while such vehicle is in motion; nor shall he have a lighted cigarette, cigar or pipe in his possession while any passenger is being carried therein, nor drink any intoxicating beverage of any kind, nor be under the influence thereof, while engaged in operating such vehicle.

"Section 25. Every person operating any motor vehicle so licensed shall stop the same before crossing the tracks of any steam railroad at the grade thereof.

"Section 26. No person operating a motor vehicle so licensed shall place or maintain or permit to be placed or maintained on such vehicle any curtain or other obstruction in such a way as to interfere with a view of the interior of such vehicle except when it may become necessary so to do to protect passengers from the weather.

"Section 27. No passenger except by special contract shall be charged more than five cents for being carried in any motor vehicle so licensed between any two points in the city within the circle with a radius of two and one-half miles from Court Square; nor shall any passenger be charged or required to pay a greater fare than that set forth on the sign required hereby, or charged or required to pay for any piece of hand baggage more than the amount of the fare charged for the transportation of the passenger, but no charge shall be made for hand baggage which shall be held by the passenger without inconvenience to other passengers.

"Section 28. Every person operating any such motor vehicle so licensed shall deliver any article left therein by any passenger to the police commission not later than twenty-four hours after finding the same and shall receive a receipt therefor from said commission, and said commission shall provide for returning the same to the owner upon proper identification and proof of ownership. All such articles delivered to said commission and not claimed within ninety days from such delivery shall be delivered to the licensee of the vehicle in which they were left.

"Section 29. Whenever in the judgment of the police commission public convenience and necessity so require the commission may grant and issue such licenses for such motor vehicles for terms of one or more weeks. The terms of such licenses shall be stated therein. The fees for such licenses shall be at the rate of one dollar

for each week of the term thereof. All of the provisions of this ordinance shall apply to such licenses except as otherwise provided in this section.

"Section 30. Nothing in this ordinance contained shall be deemed to apply to any motor vehicle used exclusively for sightseeing purposes or for carrying guests to or from any hotel.

"Section 31. Any person violating any of the provisions of this ordinance shall be liable to a fine not exceeding $20 for each such offence, and any violation thereof on any day shall constitute a separate offence. The police commission may suspend or revoke any license granted hereunder for the violation of the provisions of this ordinance, or of any other law or ordinance or for other sufficient cause, provided that the licensee shall be given an opportunity to be heard before any suspension or revocation of his license."

The amending ordinance also contained the following provision:

"Section 13. Every provision of every regulation of chapter 7 of the ordinances of 1916, being 'An Ordinance Relative to the Licensing and Regulating of Certain Motor Vehicles' and approved October 23, 1916, as hereby amended, is intended to be separable so far as possible, and if any special requirement or provision therein, although intended to be reasonable, should be adjudged to be invalid, it is not intended that the same shall affect the validity of any other provision or provisions therein, and it is intended that every general provision referring to or involving other provisions therein shall apply only to all such other provisions as are valid."

The case was submitted on briefs.

*C. Gowdy*, for the defendant.

*J. B. Ely*, District Attorney, & *C. H. Beckwith*, for the Commonwealth.

RUGG, C. J. This indictment charges the defendant with having operated a motor vehicle as a business for the transportation of passengers for hire in Springfield without a license, contrary to statute and ordinance. The defendant does not contend that he did not violate the terms of an ordinance of the city of Springfield; but he urges that the ordinance does not conform to the enabling statute and is unconstitutional on several grounds.

General power is conferred by St. 1916, c. 293, upon such cities

and towns as accept its provisions to license and regulate transportation of passengers for hire by motor vehicles, subject to the requirement of a bond from the licensee for the benefit of those injured through his negligence or that of his employees in the use of the motor vehicle. That statute has been accepted by the city council of Springfield. The authority conferred by it naturally would be exercised by the city council of Springfield. But it is provided by St. 1913, c. 429, that "The mayor and aldermen, and the city council of the city of Springfield, may delegate to commissions or commissioners, boards or heads of departments, the power respectively vested in them by the laws of the Commonwealth to grant and issue licenses and permits, and may respectively regulate the granting and issuing of licenses or permits which the mayor and aldermen or which the city council are authorized to grant and issue by the statutes of the Commonwealth. . . ."

The Legislature may delegate to general or local boards the right to enact ordinances and to require permits from an administrative officer or officers as a prerequisite to the exercise of different kinds of business affecting the public safety. *Commonwealth* v. *Maletsky,* 203 Mass. 241, 247. In this respect the statute is valid under the authority of many decisions. *Brodbine* v. *Revere,* 182 Mass. 598. *Commonwealth* v. *Sisson,* 189 Mass. 247. *Welch* v. *Swasey,* 193 Mass. 364, 375. *Lyman* v. *Commissioners on Fisheries & Game,* 211 Mass. 10. *Commonwealth* v. *Fox,* 218 Mass. 498, 500. *Commonwealth* v. *Feeney,* 221 Mass. 323. *Commonwealth* v. *Kingsbury,* 199 Mass. 542, 546. *Opinion of the Justices,* 208 Mass. 625, 630. *Commonwealth* v. *Hyde, ante,* 6, 8. It is not open to the objections held fatal in *Day* v. *Green,* 4 Cush. 433, *Coffin* v. *Nantucket,* 5 Cush. 269, *Newton* v. *Belger,* 143 Mass. 598, and *Commonwealth* v. *Staples,* 191 Mass. 384, where delegation of such power without legislative sanction was held illegal.

Regulation of the operation of vehicles used for the conveyance of passengers was an early and is a well recognized subject for local by-law or ordinance. *Commonwealth* v. *Stodder,* 2 Cush. 562. *Commonwealth* v. *Matthews,* 122 Mass. 60. *Commonwealth* v. *Page,* 155 Mass. 227. The police power extends to the reasonable control of travel upon highways in the interest of the public. *Commonwealth* v. *Morrison,* 197 Mass. 199. That this power includes automobiles is not open to question. *Commonwealth* v.

*Boyd,* 188 Mass. 79.   *Dudley* v. *Northampton Street Railway,* 202 Mass. 443, 446.   *Hendrick* v. *Maryland,* 235 U. S. 610, 622.

The authority vested by St. 1913, c. 429, in the city council of Springfield to delegate its authority to issue permits and licenses to executive or administrative boards or officers includes powers conferred in the future as well as those already conferred.   A general law which contains no restrictive phrases operates upon all matters within its scope arising after its enactment.   *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3.   This statute does not, either by grammatical construction or rational interpretation, narrow the authority to delegate to subjects already vested to the exclusion of subjects hereafter to be vested in the city council.   The power to grant, when not made imperative, implies the discretion to refuse.   The right to delegate the one includes the other.

An ordinance passed in 1916 by the city council, under the authority assumed to be conferred by the statute, was amended in some particulars in 1917.   It is contended that the original enactment was void because in several particulars in contravention of rights secured by the Constitution, and that hence it cannot be rendered valid by amendment.   See *Schwartz* v. *Oshkosh,* 55 Wis. 490, and *Cowley* v. *Rushville,* 60 Ind. 327.   Without pausing to consider the soundness, scope and limitations of that principle, it is not applicable to the case at bar.   There were numerous provisions of the original ordinance, unchanged by any amendment, which are not and could not with any show of reason be assailed as unconstitutional.   Even if it be assumed, but without so deciding, that one or more sections of the original ordinance may have been void, it is plain, without extended analysis of its provisions, that such sections were so distinct and severable in their nature from other sections that the remainder of the ordinance might have stood as valid.   *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 81.   The ordinance of 1916, as amended in 1917, constitutes a single statutory entity and is to be construed as a whole. *Merrill* v. *Paige,* 229 Mass. 511, 513.

The ordinance regulates in considerable detail the method of applying for licenses and the information to be set forth in the application.   It prescribes the fee to be paid, the amount of the bond required, the qualification of the sureties, the persons entitled

to the benefit of the bond, the signs to be displayed on the licensed motor vehicle, specifications as to operation with reference to other travel on the streets, places where stops may be made, approval of routes, rate of fare to be charged and number of passengers to be carried, with prohibitions as to certain means of solicitation of passengers and other subsidiary provisions. This summary of its terms demonstrates that the ordinance is legislative in its nature. It lays down general rules for the guidance of the licensing board and officer, and of the licensees.

When its provisions are examined more critically, they disclose no omissions or requirements invalid in their nature.

The police commission is authorized to grant licenses when the applicants are found to be "suitable to conduct such business" and the vehicles, after inspection, are found to be "proper and safe for use in such business." An untrammelled volition to grant or deny applications is not thus conferred, but rather an obligation is imposed to act reasonably with reference to a business recognized as lawful when pursued with adequate safeguards. The reasoning of such decisions as *Commonwealth* v. *Maletsky*, 203 Mass. 241, 246, *Goldstein* v. *Conner*, 212 Mass. 57, and *Kilgour* v. *Gratto*, 224 Mass. 78, where ordinances vesting an unrestrained discretion in a subordinate board or officer were held void, has no applicability to the ordinance here attacked.

The requirements of the ordinance are not unreasonable. It cannot rightly be said to be unduly burdensome to exact from each licensee a bond in the penal sum of $1,000 for the benefit of those who may be injured by the carelessness of the licensee or his employees in operating the vehicle. It is matter of common knowledge that damages far in excess of that amount not infrequently are awarded for personal injuries sustained by those who are riding in or injured by contact with automobiles. The power vested in the city treasurer to require further surety or sureties upon the bond, after determining that the existing surety or sureties are insufficient, is not open to sound objection. The principles by which he must be guided are laid down with sufficient definiteness in the ordinance and he can act only after a hearing. His conduct cannot under the ordinance be capricious, but must depend upon a finding of the existence of specified facts.

The requirement of a payment of $5 for each license issued can-

not be pronounced as matter of law a tax on property rather than a fee. Its amount is not excessive in view of the normal expenses incidental to the system of registration and inspection established by the ordinance.

There is no ground for the contention that the ordinance as thus construed is void as against public policy. Its terms are not prohibitive of a legitimate business, but are merely regulative within the limits of reason.

It is not necessary to discuss the ordinance in further detail. All the objections presented in the brief for the defendant have been considered, and no reason is found for disturbing the verdict, which is to stand.

*So ordered.*